THE CITY OF BROOKLYN, Respondent, *v.* HENRY BRESLIN et al., Appellants.

Under the provisions of the charter of the city of Brooklyn of 1854. (title 2, §§ 1, 13, subs. 4, 16, chap. 384, Laws of 1854), empowering the common council to pass ordinances licensing and regulating cartmen, etc., and to authorize the mayor to grant such licenses, ordinances prohibiting the driving of a cart within the city, for hire, unless licensed by the mayor, and authorizing the mayor to grant licenses, were valid. The delegation of power to the mayor was expressly authorized, and the requiring a license a proper regulation for the benefit of the city and its citizens.

*Thompson, Treas., etc.,* v. *Schermerhorn* (6 N. Y., 92) and *Dunham* v. *Trustees, etc.* (5 Cow., 462) distinguished.

The ordinances did not apply simply to those pursuing the separate and independent business of cartmen; but where one having carts for his own business let them out for hire, for the carriage of goods of others, without having obtained a license, he is liable for the penalties imposed by said ordinances for such violation thereof.

(Argued May 11, 1874; decided September term, 1874.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department, affirming a judgment of the County Court of Kings county, which affirmed a judgment in favor of plaintiff, rendered by the police justice of the city of Brooklyn.

This action was brought to recover a penalty fixed for the violation of an ordinance of the common council of said city.

The ordinance is as follows :

SECTION 1. No person shall drive within the city of Brooklyn, for hire or wages, any cart, sled, truck, dray, wagon, or use any hand-cart or barrow for the transportation of any merchandise, goods, or articles of any kind, or drive, or cause or permit to be driven, any hackney coach, carriage, cab, omnibus, railroad car or stage, for the transportation of passengers, without being first licensed by the mayor to do or cause the same to be done, under the penalty for each and every offence, to be paid by the owner and driver severally and respectively, of twenty-five dollars when driven for the transportation of passengers, and of ten dollars when driven for the transportation of merchandise, goods, or articles of any kind, except dirt, sand, gravel, clay, or paving stone or building rubbish; and of five dollars for the transportation of dirt, sand, gravel, clay, paving stone, or building rubbish.

The defendants were coal dealers in the said city and had a coal yard and place of business therein. They owned horses and carts and employed men to drive them, which they used in their own business and which they also hired out to any person who might engage them, without having a license.

The penalty was recovered for carting coal in April, 1869, for the firm of Hendrickson & Fleet, who had hired the horses and carts, with the drivers, of the defendants for that purpose.

Further facts appear in the opinion.

*Samuel Garrison* for the appellants. The ordinance is void and not within the power given by the charter. (*Dunham* v. *Trustees of Rochester*, 5 Cow., 462; *Vil. of Buffalo* v. *Webster*, 10 Wend., 100; *Thompson* v. *Schoonmaker*, 2 Seld., 92; S. L. 1854, chap. 384, am'd 1862, chap. 63.)

*Jesee Johnson* for the respondent. It was within the province of the city government to decide whether the ordinance was proper. (*Har. R. R. Co.* v. *Mayor, etc.,* 1 Hilt., 562; *City of Bk'lyn* v. *Cleves,* H. & D. Sup., 231, 233.) The common council was authorized by statute to delegate the power to grant licenses to the mayor. (Laws 1854, 840, pt. 4; p. 841, pt. 18; 851, § 11; 855, § 20; *Har. R. R. Co.* v. *Mayor, etc.,* 1 Hilt., 562; *People ex rel. Houston* v. *Mayor,* 7 How., 81.)

Lott, Ch. C. The charter of the city of Brooklyn, which was in force when the acts of the defendants complained of transpired, declared that the legislative power of the said corporation should be vested in a mayor and board of aldermen, who together should form the common council, and that the common council should have power, within the said city, to make, establish, publish and modify, amend or repeal, ordinances, rules, regulations and by-laws for several different purposes particularly specified; and, among others, "to license and regulate cartmen, hack, cab, omnibus, stage and truck owners and drivers, * * * and carriages and vehicles used for the transportation of passengers and merchandise, goods, or articles of any kind;" or to authorize the mayor to grant such licenses, and "to require the owners to mark the same in such manner as the common council should designate; * * * and to fix the rates of compensation to be allowed to them, and to prohibit unlicensed persons from acting in either of such capacities;" and that by every by-law, ordinance, or police or sanitary regulation the said common council might pass, it might impose such penalty for the violation or non-performance thereof, as it might deem proper, but its operation was not to extend beyond the territorial limits of the city. (See Laws of 1854, chap. 384, at p. 837, relating to the common council, in title 11, §§ 1, 13.) Subdivisions 4 and 16, and section 16, of that title, provided for prosecutions for violations of such ordinances by the city, before any police justice and other designated officers, etc.

The. ordinance by which the penalty in question was imposed was passed in pursuance of and under the authority of that provision.

The common council also passed another ordinance, which ordained, that "licenses shall be granted by the mayor, from time to time, to such persons as he may deem proper, residents of the city of Brooklyn, of the age of twenty-one years and of good moral character and not otherwise, to carry on the business or trade, or to act in the capacity of coachmen, porters, owners and drivers of hacks  *  *  *  and junk wagons or carts, and of common carriers  *  *  *  but no person shall be licensed as a cartman, except as a dirt cartman, unless he shall own a good horse and cart, over and above all debts due by him, and shall be a citizen of the United States," etc.

It is apparent, from the provision of the plaintiff's charter above referred to, and the preceding ordinances, that the mayor was authorized to license cartmen, and that the learned justice who dissented from the judgment rendered at the General Term of the Supreme Court, and the appellants' counsel in presenting his points on the argument of this appeal, were mistaken in saying that the ordinance on which the present action was based was void, because it is not in pursuance of the power given by the city charter, that no authority is given to the common council, by the city charter, to delegate their powers to the mayor or other officer of the corporation, and that the common council alone must license.   The case is clearly distinguishable from that of *Thompson, Treasurer of the City of Schenectady,* v. *Schemerhorn* (2 Selden, 92), relied on and cited by them.   There it appeared that the common council of that city were empowered by law to make by-laws and ordinances directing streets to be pitched, leveled, etc., *in such manner as they might prescribe,* under the superintendence and direction of the city superintendent. . They passed a law or ordinance directing a part of State street in that city to be pitched, leveled and paved to the center thereof, *in such manner as the city superintendent, under the direction of the committee*

*of roads of the common council should direct and require*, and it was held that the ordinance was void because the common council did not themselves prescribe in what manner the improvement should be made, and that they could not delegate that power to a city officer or committee. It follows that the defendants were liable to the penalty imposed by the ordinance, if they were guilty of violating its provisions.

It is claimed by the appellants' counsel, that "cartmen are a class who pursue a distinct and independent business, and that the power in the city charter ' to license and regulate cartmen' relates to this class, and comprises only those who pursue this distinct and separate calling." He then argues that the business of a coal dealer is not that of a cartman, and although he may use horses and carts to aid in transacting that business, this does not render him a cartman within the spirit and intent of the provision of the city charter or the ordinances enacted under it.

It is unnecessary to deny those propositions, but they do not apply to the acts of the defendants for which the penalty was enforced. It may be conceded that they could use their horses and carts in the transaction of their legitimate business as coal dealers, or any other wherein such use is required, without a license therefor; but the mere fact that they do not pursue the "distinct and independent business" of a cartman does not authorize them to do acts and perform services peculiarly applicable to that business and to which the ordinance was intended to apply. When, therefore, the defendants hired out their horses and carts to Hendrickson & Fleet they acted not in the business which they were themselves pursuing, but entered upon that of a cartman which could not be transacted without such license.

It appeared by the testimony of Henry Breslin, one of the defendants, that this was not the only occasion on which their horses and carts had been so used; that they, two days thereafter, hired them to William Lynan to cart flagging, and he said " I hire my horses and carts to anybody who wants them." Such a use of them was not within their business as coal deal-

ers but that of a cartman, and clearly came within the inhibition of the ordinance in question and was a violation of its provisions.

It is also claimed, on behalf of the appellants, that the ordinance is void as being " in restraint of trade and unreasonable, unjust, restrictive, arbitrary and oppressive." It is sufficient to say that the wisdom and expediency of granting such power to the city were within the legislative power of the State government to decide, and it cannot be said that the ordinance was more than a proper regulation of a particular branch of business for the good order of the city and the protection of the persons and property of its citizens and the advancement of its prosperity, and its validity is sustained by the decision of the Supreme Court in the case of *The City of Brooklyn* v. *Cleves* (Lalor's Supplement to Hill & Denio, 231, etc.), and by that of *The Village of Buffalo* v. *Webster* (10 Wend., 100) which distinguishes the case of *Dunham* v. *Trustees of Rochester* (5 Cow., 462), also cited by the appellants' counsel in support of his position, from that, and the reasons there stated show that it is not applicable to the case now under consideration.

There were objections taken to the admission of proof which have all been examined. I find none that entitle the defendants to a reversal of the judgment. The most objectionable evidence was entirely obviated by proof of the same nature and to the same effect subsequently introduced by themselves.

It follows, from the views above expressed, that the judgment appealed from should be affirmed, with costs.

All concur.

Judgment affirmed.