214    PEOPLE ex rel. COX v. SPECIAL SESSIONS.

First Department, March Term, 1876.

THE PEOPLE ex rel. PATRICK COX, Plaintiff in Error, v. THE JUSTICES OF THE COURT OF SPECIAL SESSIONS, Defendants in Error.

*Ordinance of municipal corporation — power of legislature to confer authority to enact — § 82, art. 11, chap. 335 of 1873.*

The legislature has power to confer upon *any department* of a municipal government — *e. g.*, the board of health — the authority to enact and enforce ordinances. The power results from and is incidental to its power to create and maintain municipal organizations.

Certiorari to the Court of Special Sessions to review the conviction of the plaintiff in error of a misdemeanor.

*Wilson S. Wolf*, for the plaintiff in error. The court can review all the evidence. (*Mullin* v. *The People*, 24 N. Y., 399.) The legislature cannot confer upon the board of health power to enact ordinances. (*People* v. *Albertson*, 55 N. Y., 56; *Corning* v. *Greene*, 23 Barb., 53; *Bacon* v. *Robertson*, 18 How., 480.)

*Benj. K. Phelps*, district attorney, for the defendants in error.

Daniels, J.:

The relator was tried, convicted and sentenced to imprisonment for the period of one month in the penitentiary, for keeping and offering for sale watered and adulterated milk. The act charged against him was a violation of section 45 of the sanitary code, adopted and promulgated by the board of health of the city of New York. By that section of the code it was declared " that no person shall have at any place where milk, butter or cheese is kept for sale, nor at any place offer or have for sale, nor shall any person bring or send to said city any unwholesome, watered or adulterated milk, or milk known as swill milk, or milk from cows or other animals that, for the most part, lived in stables," etc.

It is not claimed in behalf of the relator, that the act charged against him was not a violation of the terms of this section of the sanitary code. But it is objected that the board of health could not be constitutionally empowered to enact it. If the legislature could confer such authority on the board, ample reason exists for conclud-

ing that it has been done, for by section 82, article 11 of chapter 335 of the Laws of 1873, it was provided that, besides conforming the existing sanitary ordinances to its provisions, the board should also be "authorized and empowered to add to such sanitary code from time to time, and shall publish additional provisions for the security of life and health in the city of New York, * * * which shall be published in the City Record. Any violation of said code shall be treated and punished as a misdemeanor, and the offender shall also be liable to pay a penalty of fifty dollars, to be recovered in a civil action in the name," etc.

The propriety of such an ordinance as that which the board has enacted is so evident, as to be clearly within the power contained in this section of the charter. It was necessary for the protection and preservation of the health of the inhabitants of the city. A more wholesome regulation could hardly have been devised or adopted, and it should be sustained and enforced by the courts, unless the board were deprived of the power to prescribe it, by some constitutional disability. The objection seems to be, that it involved such an exercise of legislative power as had been exclusively confided to the senate and assembly. Several adjudicated cases were cited and relied upon as maintaining that position, but an examination of them will at once show that they result in no such conclusion. (*Hart* v. *Mayor of Albany*, 3 Paige, 216; *Aikin* v. *Western R. R.*, 20 N. Y., 370; *Corning* v. *Greene*, 23 Barb., 33; *Bacon* v. *Robertson*, 18 How. [U. S.], 480; *People* v. *Albertson*, 55 N. Y., 50.) Neither of these cases contains any thing which would justify a denial of the authority exercised in this instance by the legislature. It is an authority which for many years has been exercised by legislative bodies in this country and in England, and it results from, and is incidental to, the power to create and maintain municipal organizations. The power to enact and enforce ordinances has always formed an essential feature in the creation of those corporations, and the Constitution contains nothing restricting its exercise to any particular part of the municipal body. It may be conferred upon the mayor and common council, or the latter body alone, or any other department of the municipal government, as may appear to be most just and expedient in the judgment of the legislature. That is a necessary result of the ple-

nary authority secured by the Constitution to the legislature. Under that instrument the power exists to create and maintain bodies of that character; and how it may be most judiciously done, what authority over their inhabitants they may have, and how it may best be exercised, are matters that must necessarily be confided to the judgment of the legislature. It had the power to authorize the city of New York to enact ordinances from time to time, as might appear to be necessary for the promotion, preservation and protection of the public health, and as the constitution nowhere required that the authority should be given to the common council, the legislature was at liberty to deposit it elsewhere. Its authority to enact laws where the Constitution has not restrained it was complete and ample (*Leggett* v. *Hunter*, 19 N. Y., 445, 463), and as its power in this respect had not been limited, that was sufficient to warrant the delegation of the power to enact this ordinance, to the board of health. It was empowered as a department of the municipal government to enact this and other ordinances required to maintain the proper sanitary condition of the city, for the obvious reason that it would discover what might be requisite for that purpose in the discharge of its other duties, more readily than either of the other departments. The power was necessary to provide for apprehended emergencies, and it was placed where it could be most efficiently exercised. That the legislature could confer it upon the corporation is very clearly settled by an unbroken weight of authority: *Jones* v. *Firemen's Fund Ins. Co.* (2 Daly, 307); *Hopkins* v. *Mayor of Swansea* (4 Meeson & W., 621), where it was held that corporate by-laws, enacted by authority, have the same effect within the appropriate limits as an act of Parliament (id., 640); *Heland* v. *City of Lowell* (3 Allen, 407), in which an ordinance was held to be as binding on the members of the corporation and all other persons, as any statute or other law of the commonwealth (id., 408); *City of Brooklyn* v. *Breslin* (57 N. Y., 591); *Heister* . v. *Metropolitan Board of Health* (37 id., 661); *Tanner* v. *Trustees of Albion* (5 Hill, 121), where such power was given to, and exercised by the trustees of a village; and there is nothing in either of these decisions by which it has been required to be lodged in any particular functionaries of the municipality.

The practice, on the other hand has long existed, by which this

power has been conferred upon boards of health, and it has not been limited to the cases of large cities, but the trustees of villages and the local officers of towns, even, have been made its recipients, and they, with the more complete boards of cities, have been delegated similar authority to enact and enforce such ordinances and regulations as the exigencies of the public health should appear to require. (Laws of 1850, chap. 324, §§ 1–3; sub. 3, § 3; Laws of 1854, chap. 169; Laws of 1870, chap. 559.) The ordinance in this case could not be held invalid without practically undermining this entire system, which has existed for years entirely unchallenged. The power of the legislature over this subject has not been denied by the Constitution, and the conclusion necessarily follows that it could, as it has, delegate to the board of health of the city of New York the power to make the ordinance in question. It was merely the exercise of municipal authority through the intervention of this board instead of the common council, and no well founded objection could be taken to that, as long as the ordinances to be enacted were to be confined to the subject committed to its jurisdiction and control.

It was objected upon the argument, that it did not appear, by the return, that the persons before whom the relator was tried were the officials having the power to hold the court. They did, however, show that they were such officials, for their return was prefaced with the statement of that fact. Besides that, the writ of certiorari was issued to them as persons lawfully acting in the capacity of police justices, and as such, members of the Court of Special Sessions.

The objection was also urged that the evidence was not sufficient to sustain the conviction, but it was shown beyond controversy, that the milk kept for sale had been diluted with water, and that the relator appeared to participate in the management of the business. His position upon the trial was that the business was in his own name only for the benefit of a friend pecuniarily under embarrassment, but two of the witnesses stated that he admitted to them in direct terms, that he was the proprietor, and to one that he had the management of the business. The other also stated that he had found the defendant at the place where the business was carried on, offering milk for sale.

Evidence was given by and on the part of the relator, tending to show that Gallagher, and not himself, carried on the store where the milk was kept and offered for sale, but it was not controlling over the disposition which should be made of the case; its weight and force merely presented a controversy as to the fact, which it was the peculiar province of the court having the witnesses before it, to decide. That tribunal, upon sufficient evidence, determined the fact against the relator, and that is conclusive upon this review of the case. The court, having the witnesses before it, could best determine which view was most likely to be correct, and this court should, for that reason, adopt its conclusion on that subject. This case belongs to a class which, when proven, deserves to be properly punished. The practice designed to be corrected by the law and the ordinance, is deleterious to the public health, as well as grossly fraudulent in its character, and when persons guilty of it are made the subject of prosecution and conviction, strenuous efforts are not required to be made, to relieve them from the consequences so well deserved by their misconduct. The case against the relator was sufficiently made out to justify his conviction, and the judgment of the court of special sessions should therefore be affirmed.

DAVIS, P. J., and BRADY, J., concurred.

Judgment affirmed.