# SUPREME COURT.

## In the Matter of WRIGHT ET AL.

*Commissioners of Central Park — Their power to prohibit the use of bicycles therein.*

Under the power conferred by the act of 1871, upon the commissioners of Central Park they have the power to prohibit by resolution the use of any bicycle or tricycle therein, and with their determination, in the absence of fraud or collusion the courts cannot interfere.

*At Chambers, July,* 1882.

*Mr. Wetmore, Mr. Higgins* and *Mr. Thompson,* for petitioners.

*Mr. Wm. C. Whitney, David J. Dean* and *John J. Townsend, Jr.,* for respondents.

LAWRENCE, *J.* — On the 7th day of July, 1880, the commissioners of the Central park adopted the following resolution or ordinance:

" *Resolved,* That no bicycle or tricycle be allowed in the Central or city parks."

The petitioners were arrested for a violation of this ordinance, and having been committed for the non-payment of the fine imposed upon them by the police magistrate, they were brought before me on writs of *habeas corpus,* and they allege, in substance, in their traverse to the returns to said writs, that the ordinance in question is unreasonable and, therefore, void.

By chapter 290 of the Laws of 1871, it is provided: " Section 6   *   *   *   and the said board shall have full and exclusive power to govern, manage and direct the said several public parks, squares and places; to pass ordinances for the regulation and government thereof, and generally in regard

to said public parks, squares and places they shall possess all the powers and authority heretofore possessed by the mayor, aldermen and commonalty of said city in respect to the public parks, squares and places in said city, and all persons offending against such ordinances shall be deemed guilty of a misdemeanor and be punished on conviction, &c. (*Vol.* 1, *Laws of* 1871, *p.* 572).

And by section 83 of chapter 335 of the Laws of 1873 the powers and duties belonging to the department or commissioners of parks were devolved upon and continued in the department of public parks thereby created. It will be observed that the power conferred by the act of 1871 upon the commissioners is very broad and comprehensive. The act declares that they shall have the full and exclusive power to govern, manage and direct the said several public parks, squares and places. This vests in the commissioners the widest discretion, and no court would, in my opinion, be justified in setting aside a provision made by the commissioners for the regulation, government, management or direction of the parks, except to the clearest of cases.

After examining the evidence in this case I am forced to the conclusion that the ordinance in question is one which, under the statute, the park commissioners were authorized to adopt, and that even although if I were acting in their place I might not regard such an ordinance as necessary, it is not, in a legal sense, so unreasonable to warrant me in substituting my judgment for the judgment of the commissioners. It is, perhaps, hardly necessary to cite authorities, but I will refer to a few cases in this connection. In the case of the *Buffalo and Niagara Falls R. R. Co.* agt. *The City of Buffalo* (5 *Hill,* 209), it was held that a statute giving power to the common council of a city to regulate the running of railroad cars within the corporate limits, authorizes the adoption of an ordinance entirely prohibiting the propelling of cars by steam through any part of the city. In that case NELSON, C. J., says: " Power over the subject is given in general terms, and

was doubtless intended to be broad enough to enable the public authorities to control and regulate the running of cars in a way compatible with the public interests of the city and the proper security of the persons and property of its inhabitants. A large discretion is therefore conferred upon the common council. They are to 'regulate' the running of the cars — that is, according to the ordinary acceptation of the term, to prescribe rules or laws by which the running of cars within the city is to be governed — and the power may, without any strained construction, well apply to the means or force by which the cars are propelled. A right to regulate the 'running' seems *ex vi termini* to imply an authority to regulate the power by which they are driven."

In *Cronin* agt. *The People* (82 *N. Y.*, 318) it was held that the common council of the city of Albany, who by its charter was authorized to enact ordinances to regulate the erection, use and continuance of slaughter-houses, had power to pass an ordinance prohibiting the slaughtering of animals within certain specified portions of the city.

In *Schank* agt. *The Mayor* (10 *Hun*, 124) it was held that where the charter of the city of New York provided that the common council shall have no power to "make a lease of any real estate or franchise, save at a reasonable rent; the decision of the question as to whether or not the rent reserved is a reasonable one is left to the discretion of the common council, and in the absence of fraud or collusion its decision is conclusive." This case was affirmed by the court of appeals (69 *N. Y.*, 444.)

In the *New York and Harlem Railroad Company* agt. *The Mayor of New York* (1 *Hilt.*, 562–588) HILTON, J., says : "Courts are bound to assume that where a discretion is vested in a municipal body exercising functions of a legislative character, good reasons existed for the adoption of a regulation or ordinance which was the result of such a discretion."

In the *City of Brooklyn* agt. *Breslin* (57 *N. Y.*, 596),

EARL, commissioner, says : " It is also claimed on behalf of the appellants that the ordinance is void as being in restraint of trade, and unreasonable, unjust, restrictive, arbitrary and oppressive. It is sufficient to say that the wisdom and expediency of granting such power to the city were within the legislative power of the state government to decide, and it cannot be said that the ordinance was more than a proper regulation of a particular branch of business, for the good order of the city, and the protection of the persons and property of its citizens, &c."

These authorities seems to me amply to sustain the proposition that the ordinance in question was within the discretionary power of the park commissioners, and that the court cannot say as matter of law or fact, that it is unreasonable. On the argument much stress was laid upon the fact that bicycles are admitted in Fairmount park, Philadelphia, in the streets of Boston and London and other places. Precisely what the powers are of the authorities in those cities over their public parks and streets does not appear from anything in this case. If they have the same powers as the park commissioners, the not uncommon spectacle is presented of two bodies having similar discretionary powers, differing in judgment as to the mode and manner in which that discretion shall be exercised. But however that may be, it seems to me to be a sufficient answer to any argument sought to be deduced therefrom, that in this city the legislature has vested the power of determining what shall be done in regulating, governing, managing and directing the several public parks in the park commissioners, and with their determination, as the authorities already cited show, in the absence of fraud or collusion, the courts cannot interfere.

The rule in such cases is forcibly stated by LOURIE, justice, in *Fisher* agt. *Harrisburg* (2 *Grant's Pennsylvania Cases*, 291–296). The learned justice says, " Where the municipal legislature has authority to act, it must be governed not by our, but by its own discretion, and we shall not be hasty

in convicting them of being unreasonable in the exercise of it."

In conclusion, I am of the opinion that the ordinance in question is valid and binding, and that, therefore, the writ of *habeas corpus* should be dismissed, and the prisoners remanded.