## IN THE MATTER OF WILLIAM M. WRIGHT, S. CONANT FOSTER AND HENRY H. WALKER.

*Park commissioners in New York—power of, to pass ordinances—1871, chap. 290, sec. 6; 1873, chap. 335, sec. 33—Reasonableness of such ordinance—the question of fact, as to whether it is reasonable, is not triable on the return to a writ of habeas corpus.*

Section 6 of chapter 290 of 1871, and section 33 of chapter 335 of 1873, confer upon the park commissioners the full and exclusive power to govern, manage and direct the several public parks, squares and places in the city of New York, and a resolution or ordinance passed by them, in pursuance of the power so conferred, providing that no bicycle or tricycle should be allowed in the Central or city parks is valid, and cannot be held void as being unreasonable.

The question of fact, as to whether or not such ordinance is unreasonable, cannot be tried upon the return to a writ of *habeas corpus* issued upon the application of persons committed for the non-payment of fines imposed upon them by a police magistrate after they had been tried before him for a violation of the ordinance.

APPEAL from an order made at a Special Term dismissing several writs of *habeas corpus*, and remanding the appellants (the applicants) severally to the custody of the warden of the city prison.

*Edmund Wetmore*, for the appellants.

*George P. Andrews*, for the City of New York, respondent.

DAVIS, P. J.:

In disposing of the several writs of *habeas corpus* in the court below, the following opinion was pronounced by the court:

LAWRENCE, J.— On the 7th day of July, 1880, the commissioners of the Central Park adopted the following resolution or ordinance :

"*Resolved*, That no bicycle or tricycle be allowed in the Central or city parks."

The petitioners were arrested for a violation of this ordinance, and having been committed for the non-payment of the fine imposed upon them by the police magistrate, they were brought before me on writs of *habeas corpus*, and they allege in substance, in their traverse to the returns to said writs, that the ordinance in question is unreasonable, and therefore void.

By chapter 290 of the Laws of 1871 it is provided : " Section 6. *  *  *  *   And the said board shall have the full and exclusive power to govern, manage and direct the said several public parks, squares and places; to pass ordinances for the regulation and government thereof, and generally in regard to said public parks, squares and places, they shall possess all the powers and authority heretofore possessed by the mayor, aldermen and commonalty of said city in respect to the public parks, squares and places in said city, and all persons offending against such ordinances shall be deemed guilty of misdemeanor, and be punished on conviction," etc.   (Vol. 1, Laws of 1871, p. 572.)

And by section 83 of chapter 335 of the Laws of 1873, the powers and duties belonging to the department or commissioners of parks were devolved upon and continued in the department of public parks thereby created.   It will be observed that the power conferred by the act of 1871 upon the commissioners is very broad and comprehensive.   The act declares that they shall have the full and exclusive power to govern, manage and direct the said several public

parks, squares and places. This vests in the commissioners the widest discretion, and no court would, in my opinion, be justified in setting aside a provision made by the commissioners for the regulation, government, management or direction of the parks, except in the clearest of cases.

After examining the evidence in this case, I am forced to the conclusion that the ordinance in question is one which, under the statute, the park commissioners were authorized to adopt, and that even although if I were acting in their place, I might not regard such an ordinance as necessary, it is not in a legal sense so unreasonable as to warrant me in substituting my judgment for the judgment of the commissioners. It is perhaps hardly necessary to cite authorities, but I will refer to a few cases in this connection. In the case of the *Buffalo and Niagara Falls Railroad Company* v. *The City of Buffalo* (5 Hill, 209) it was held that a statute giving power to the common council of a city to regulate the running of railroad cars within the corporate limits, authorizes the adoption of an ordinance, entirely prohibiting the propelling of cars by steam through any part of the city. In that case NELSON, C. J., says: "Power over the subject is given in general terms, and was doubtless intended to be broad enough to enable the public authorities to control and regulate the running of cars in a way compatible with the public interests of the city, and the proper security of the persons and property of its inhabitants. A large discretion is, therefore, conferred upon the common council. They are to 'regulate' the running of the cars; that is, according to the ordinary acceptation of the term, to prescribe rules or laws by which the 'running' of cars within the city is to be governed, and the power may, without any strained construction, well apply to the means or force by which the cars are propelled. A right to regulate the 'running' seems *ex vi termini* to imply an authority to regulate the power by which they are driven."

In *Cronin* v. *The People* (82 N. Y., 318) it was held that the common council of the city of Albany, who, by the charter, were authorized to enact ordinances to regulate the erection, use and continuance of slaughter houses, had power to pass an ordinance prohibiting the slaughtering of animals within certain specified portions of the city.

In *Schanck* v. *The Mayor* (10 Hun, 124) it was held that where the charter of the city of New York provided that the common council shall have no power to make a lease of any real estate or franchise, save at a reasonable rent, the decision of the question as to whether or not the rent reserved is a reasonable one is left to the discretion of the common council, and in the absence of fraud or collusion its decision is conclusive. This case was affirmed by the Court of Appeals (69 N. Y., 444).

In the *New York and Harlem Railroad Company* v. *The Mayor of New York* (1 Hilt., 562–588), HILTON, J., says: "Courts are bound to assume that where a discretion is vested in a municipal body exercising functions of a legislative character, good reasons existed for the adoption of a regulation or ordinance which was the result of such a discretion."

In the *City of Brooklyn* v. *Breslin* (57 N. Y., 596), EARL, Comr., says: "It is also claimed on behalf of the appellants that the ordinance is void as being ' in restraint of trade, and unreasonable, unjust, restrictive, arbitrary and oppressive.' It is sufficient to say that the wisdom and expediency of granting such power to the city were within the legislative power of the State government to decide, and it cannot be said that the ordinance was more than a proper regulation of a particular branch of business for the good order of the city and the protection of the persons and property of its citizens," etc.

These authorities seem to me amply to sustain the proposition that the ordinance in question was within the discretionary power of the park commissioners, and that the court cannot say, as matter of law or fact, that it is unreasonable. On the argument much stress was laid upon the fact that bicycles are admitted in Fairmount Park, Philadelphia, in the streets of Boston and London, and other places. Precisely what the powers are of the authorities in those cities over their public parks and streets does not appear from anything in the case. If they have the same powers as the park commissioners the not uncommon spectacle is presented of two bodies having similar discretionary powers, differing in judgment as to the mode and manner in which that discretion shall be exercised. But however that may be, it seems to me to be a sufficient answer to any argument sought to be deduced therefrom that in this city the legislature has vested the power of determining what shall

be done in regulating, governing, managing and directing the several public parks in the park commissioners, and with their determination, as the authorities already cited show, in the absence of fraud or collusion, the courts cannot interfere.

The rule in such case is forcibly stated by LOWRIE, Justice, in *Fisher* v. *Harrisburg* (2 Grant's Penn. Cases, 291, 296).

The learned justice says : " Where the municipal legislature has authority to act, it must be governed not by our, but by its own discretion, and we shall not be hasty in convicting them of being unreasonable in the exercise of it."

In conclusion, I am of the opinion that the ordinance in question is valid and binding, and that, therefore, the writ of *habeas corpus* should be dismissed, and the prisoners remanded.

We concur in the reasoning and conclusions of this opinion, and in the correctness of the order remanding the petitioners.

We think also that the writs should have been dismissed, and the petitioner remanded without proceeding to the trial of the question as one of fact whether the ordinance was or was not a reasonable one.

The court has no jurisdiction on *habeas corpus* after convictions in criminal cases, to retry questions of fact upon which the correctness of the judgment of the court in which the petitioner was convicted depends. Such questions must be tried and determined by the court having jurisdiction to try the alleged defense. So far as the reasonableness or unreasonableness of the ordinance depended on questions of fact, the place for their trial was the court of the police justice, and the judgment of that court could only be reviewed on appeal, or writ of *certiorari*, by the appellate court having jurisdiction to hear such appeal.

The return to the writ of *habeas corpus* in these cases showed nothing more than the commitments issued by the police justice. They recited the arrest, trial and judgment of the court convicting the petitioners of violating the ordinance. No question was made as to their sufficiency of form. None of the proceedings had before the police justice were brought up, and it must be assumed that the trial was in all respects regular. The traverse simply presented the fact that the ordinance so violated was one enacted by the park commissioners prohibiting the use of bicycles in the Central Park, and alleging

that such ordinance was unreasonable and void by reason of the fact set forth in the petition. It is not the province of the writ of *habeas corpus* to retry any questions of fact upon which the findings of the court of original jurisdiction must be presumed to have been predicated. And unless it appear as matter of law that the ordinance is void it is the duty of the magistrate to remand the petitioner, leaving him to his remedy of review by appropriate proceedings. A very erroneous impression of the purpose and office of the writ of *habeas corpus* seems to be rapidly perverting it from a writ of relief from unlawful imprisonment to one of review for the retrial of questions of fact, or the reconsideration of questions of law, clearly within the jurisdiction of the court or officer who has passed upon the case and committed the accused. In this case the retrial of the question of the reasonableness of the ordinance as one depending upon facts has occupied a long time, and the evidence extends through several hundred printed pages.

The opinion of the learned judge at Special Term has correctly disposed of all the questions, and our reference to the practice is only needed to enable us to disapprove of the unnecessary and illegal course often taken in proceedings where petitioners have been tried or examined and committed by a court having jurisdiction of both the person and subject-matter.

The order should be affirmed.

Daniels, J., concurred.

Present — Davis, P. J., Daniels and Macomber, JJ.

Order affirmed.