PEOPLE v. SHELLENBERG.

(Supreme Court, Appellate Division, First Department. June 18, 1909.)

1. MUNICIPAL CORPORATIONS (§ 721*)—PARKWAYS—VEHICLE ORDINANCE.
    Laws 1900, p. 1437, c. 657, § 23, granting a franchise to a coach company to operate its stages on Riverside Drive in the city of New York, but making no provision as to the pattern of the stages to be operated, did not authorize the company to operate double-deck motor omnibuses in violation of a valid regulation of the park department prohibiting the operation of vehicles more than 10 feet high along any parkway.
    [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1543; Dec. Dig. § 721.*]

2. MUNICIPAL CORPORATIONS (§ 721*)—CHARTER—PARK DEPARTMENT—POWERS.
    Under New York City Charter (Laws 1901, pp. 257, 259, c. 466) §§ 612, 616, as amended by Laws 1908, c. 135, pp. 385, 386, §§ 1, 3, conferring powers on the park department of the city of New York, that department had power to adopt a regulation prohibiting the use of any vehicle along any park or parkway measuring over 10 feet from the tread of the wheel to the highest portion of the vehicle.
    [Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 721.*]

3. MUNICIPAL CORPORATIONS (§ 721*)—PARK REGULATIONS—REASONABLENESS.
    Where the park department of New York City had power to prescribe reasonable regulations for the operation of vehicles in parks and parkways, a regulation prohibiting the operation of vehicles more than 10 feet high in the parks and parkways, having been adopted by them, would be regarded as a reasonable exercise of discretion in the absence of proof to the contrary.
    [Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 721.*]

Appeal from Court of General Sessions, New York County.

Eugene Shellenberg was convicted of violating a park ordinance prohibiting the use of vehicles more than 10 feet high on any parkway in the city of New York, and he appeals. Affirmed.

Argued before INGRAHAM, McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

William H. Page, for appellant.
Terence Farley, for the People.

SCOTT, J.  This is an appeal from an order of one of the judges of the General Sessions affirming a judgment of a city magistrate convicting the appellant of the violation of section 34 of the Park Ordinances.  The power of the park board to adopt ordinances is conferred by section 610 of the Revised Charter (chapter 466, p. 256, Laws 1901, amended by chapter 628, p. 1489, Laws 1904), by which it is authorized "to establish and enforce rules and regulations for the government and protection of public parks and of all property in charge of said board or under its control."  Upon filing such a rule or regulation with the city clerk, it becomes "a general ordinance of the city of New York," a violation of which is a misdemeanor.  The ordinance which the appellant has been convicted of violating was duly adopted and filed in January, 1909, and reads as follows:

"Whereas, any vehicle measuring over ten feet in height from the tread of the wheel to the highest part of the vehicle is damaging to the trees along park roads and parkways, therefore, the park board does hereby establish the following rule and regulation for the protection of the trees along park roads and parkways of the city, which shall be known as section 34 of the General Park Ordinances, Rules and Regulations, chapter 16 of the Code of Ordinances of the City of New York, to take effect February 1st, 1909:

"No vehicle of any kind or description measuring over ten feet from the tread of the wheel to the highest portion of the vehicle, whether propelled by muscular or motive power, shall be allowed to run along any driveway of any park or parkway under the jurisdiction of the department of parks."

The offense of which appellant was convicted consisted of driving on Riverside Drive a double-decked motor omnibus of the Fifth Avenue Coach Company which exceeded the prescribed height by more than a foot.

The Fifth Avenue Coach Company claims the right to operate its stages upon Riverside Drive under section 23, c. 657, p. 1437, Laws 1900, which authorized an existing stage line (as the company was) to extend its existing routes at pleasure upon receiving approval of the State Board of Railroad Commissioners, without further or other authority, proceeding, or consent required under any act, general, public, private, or local.  It is not necessary now to consider the validity of an extension claimed under this act, because for the purposes of this appeal it may be assumed that the route was validly and lawfully extended so as to include Riverside Drive.  But if it be assumed that the company has a right to operate its stages on Riverside Drive, it does not follow that they may so operate them as to violate a valid city ordinance; and the ordinance in question here, if otherwise valid, cannot be impeached merely because it interferes with the use of the particular kind of stage or omnibus which the company has chosen to operate.  The franchise at the utmost is only one to operate stages, and not one to operate any particular pattern of stage.  In electing to extend its route and accepting the franchise or consent so to do, the company must be deemed to have acquired its right to operate subject to the paramount right of the municipality to reasonably regulate traffic; and, if the company chose to select a route which included a public park, it thereby subjected itself to the reasonable regulations of the department having jurisdiction over the parks.

The only question in the case, therefore, is whether or not the ordi-

.nance is a reasonable one and within the power of the park department. The statutory powers conferred upon the department of parks are very broad and comprehensive. By section 612 of the Revised Charter (as amended by section 1, c. 135, p. 385, Laws 1908) it is provided:

"It shall be the duty of each commissioner, subject to such general rules and regulations in conformity therewith, to maintain the beauty and utility of all such parks * * * as are situated within his jurisdiction, and to institute and execute all measures for the improvement thereof for ornamental purposes and for the beneficial uses of the people of the city."

By section 616 (as amended by said act of 1908, p. 386, c. 135, § 3) it is further provided that:

"The park board shall, in addition to the powers, rights and duties expressly conferred or imposed by this act, * * * possess and exercise all the powers, rights and duties and shall be subject to all the obligations heretofore vested in, conferred upon or required of the corporation known as the mayor, aldermen and commonalty of the city of New York or the department of parks of said city, or the commissioners of parks, or in any other board, body or officer therein or thereof, * * * so far as much powers, rights, duties and obligations concerned or affected the control, care, management, government, extension, maintenance or administrative jurisdiction of the parks * * * situated or lying within the city of New York. * * * Nothing contained in this section shall be construed to limit the administrative control of the several commissioners over the parks * * * situated or lying within their respective jurisdictions."

Among the well-recognized powers of a park commissioner is the regulation of traffic within the parks, and in this state it has been held that such power includes the right to wholly exclude from the parks vehicles deemed to be unsuited or undesirable, as bicycles and tricycles were once considered. Matter of Wright, 63 How. Prac. 345, affirmed 29 Hun, 357. There are several classes of public places in the city of New York which have been placed under the jurisdiction of the department of parks. There are the parks proper, certain ordinary city streets which abut upon or are adjacent to parks, and parkways which partake of the characteristics of both parks and highways. As to the parks proper, the authority of the park department is practically absolute so long as their use is confined to park purposes. The department may lay out roads and pathways at pleasure, some for the exclusive use of pedestrians, some for the exclusive use of horsemen, and some for the exclusive use of vehicles of various kinds, and may exclude objectionable vehicles altogether. As to streets like Fifth avenue, Central Park west, Seventy-Second street, and the like, the park department is given certain limited powers of care and maintenance, the establishment of curb and stoop lines, etc.; but although such streets may be in some acts declared to be parts of the public parks, this undoubtedly means that they are such for the purposes of the powers over them committed to the park department, but would not, in my opinion, authorize the department to withdraw them from public use as city streets. The parkways lie between these two. They are accurately defined in the Century Dictionary as "broad thoroughfares, planted with trees and intended for recreation as well as for common street traffic." Riverside Drive is officially and legal-

ly a park, although it corresponds in fact more nearly with the above-quoted definition of a parkway. It was laid out by the park department under chapter 697, p. 1748, Laws 1867, which gave that department power to lay out "streets, avenues, roads, public squares or places" between 59th and 155th streets, west of 8th avenue. How it was denominated on the map filed under that act does not appear; but by section 2, c. 447, p. 483, Laws 1876, it was declared to be one of the parks and public places of the city of New York, and placed under the control of the park department, where it has ever since remained. It cannot, I think, be doubted that it is within the jurisdiction and duty of the park department to reasonably regulate traffic on Riverside Drive, and especially to protect the trees along the drive. That vehicles of an excessive height will probably injure the lower branches of the trees that overshadow the drive and thus impair their beauty and usefulness is self-evident. The question is, what height shall be deemed excessive? or, in other words, what limitation upon the height of vehicles should be considered reasonable? For it is apparent that there is a dividing line somewhere between reason and unreason. The law has placed the determination of that question in the first instance in the discretion of the park commissioners, and we may not lightly convict them of having used their discretion unreasonably. They are entitled to the presumption that they have acted deliberately and reasonably. The case furnishes no data upon which we can say that they have not done so. There is, therefore, no ground upon which we can say that the ordinance under which the appellant was convicted is invalid.

The order appealed from is affirmed. All concur.