THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* BENJAMIN NAHMAN, ALBERT SHAFRAN, NELSON LEVITT, CHARLES INTRATOR, MORRIS J. SCHWARTZ, MILTON SELIGMAN, NORMAN STERNBACH, MORRIS DIMOWITZ, NATHAN LITWACK, IRWIN GREENBERG, JOSEPH E. NAHAM, SOL WOLLIS and BERNARD SILVERMAN, Appellants.

Court of Special Sessions of the City of New York, Appellate Part, First Department, April 29, 1947.

*Bertram Bakerman* for appellants.

*Emanuel Redfield* for American Civil Liberties Union, *amicus curiæ.*

*Ephraim S. London* for National Lawyer's Guild, *amicus curiæ.*

*Frank S. Hogan, District Attorney (Edward T. Perry* of counsel), for respondent.

*Per Curiam.* On March 15, 1946, at 12:30 P.M. the appellants, thirteen in number, as part of a prearranged plan, carried placards into City Hall Park and were shouting disapproval of Winston Churchill who was then the guest of the Mayor of the City of New York. These placards contained inscriptions similar in content, and typical of them was the inscription which appeared on the one carried by appellant Nahman: " No American shall die for Churchill's Empire."

The appellants had no permit to carry these placards and there is no evidence that an application had been made to the Park Commissioner for a permit. They were arrested and thereafter convicted of a violation of section 21 of article III of the Rules and Regulations of the Department of Parks of the City of New York, which reads as follows: " Section 21. *Meetings, Exhibitions, Parades, Racing, etc.* No person shall erect any structures, stand or platform, hold any meeting, perform any ceremony, make a speech, address or harangue; exhibit or distribute any sign, placard, notice, declaration or appeal of any kind or description; exhibit any dramatic performance, or the perfomance in whole or in part of any interlude, tragedy, comedy, opera, ballet, play, farce, minstrelsy, dancing, entertainment, motion picture, public fair, circus, juggling, ropewalking, or any other acrobatics, or show of any kind or nature; or run or race any horse, or other animal, or, being in or on a vehicle, race with another vehicle or horse, whether such race be founded on any stake, bet or otherwise; in any park or upon any park street except by permit. No parade, drill or manoeuver of any kind shall be conducted, nor shall any procession form for parade or proceed in any park or park street without a permit."

The sole question on this appeal is whether the requirement that a permit be first obtained before engaging in those activities mentioned in the regulation involving free speech in city parks, is such a restriction on the freedom of speech guaranteed by the First Amendment to the Constitution of the United States that the regulation involved herein is void on its face as in contravention of the due process clause of the Fourteenth Amendment

to the Constitution. Bearing placards with legends thereon is a means employed for the dissemination and communication of ideas to others and doubtlessly is embraced within the concept of freedom of speech protected by the First Amendment.

The contentions of all parties appearing on this appeal have been fully and ably presented in the briefs submitted and the issue is indeed a close one.

We stress the point that a park is a pleasure ground set apart for recreation of the public, to promote its health and enjoyment. (*Perrin* v. *New York Central R. R. Co.*, 36 N. Y. 120, 124; *Williams* v. *Gallatin*, 229 N. Y. 248.) The Park Commissioner's powers in the government, management and control of parks are very broad and extensive. The beauty and utility of the parks are among the objectives of his powers. (New York City Charter [1938], § 532.) The maintenance and control of parks has been described as proprietary in character. (*Davis* v. *Massachusetts*, 167 U. S. 43; *People* v. *County of Westchester*, 282 N. Y. 224, 236.) In another case, the authority of the Park Commissioner as to the parks proper has been termed "practically absolute". (*People* v. *Shellenberg*, 133 App. Div. 79, 82.) He is authorized to make rules and regulations for the government and protection of public parks which have the force and effect of law, and violations thereof are punishable by not more than thirty days' imprisonment or by a fine of not more than $50 or by both. (§ 534.)

We have carefully examined the cases cited on all sides but have seen none that provides the simple answer to the problem here, lest it be the case of *Davis* v. *Massachusetts* ([1897], *supra*). Virtually every case deals with the particular right or freedom involved as applied to streets and not parks. The exception is *Hague* v. *C. I. O.* (307 U. S. 496) wherein was involved the right of public assembly in public streets, highways, public parks and public buildings. However, in that case the court found as a fact that the ordinance under attack had actually been made the instrument of arbitrary suppression of public assembly and was inherently designed and calculated to do so. We see no helpful analogy between the *Hague* case (*supra*) and the instant one.

The reported cases recognize that the right to freedom of speech is not absolute but relative only and that it is subject to regulation but in just what manner is nowhere indicated, and is not at all clear. Implicit in the exercise of any of the fundamental rights protected by the Bill of Rights is that they must not be abused to the detriment of the public safety and welfare.

If, as applied to parks, regulation is to be employed only upon the actual exercise of the particular right involved, such as free speech or free assembly, then we substitute for the requirement of a permit issued by a duly elected or appointed official, the judgment and discretion of police officers called to the scene, generally under exciting and provoking circumstances. This is not conducive to good public order nor does it tend to promote in the interest of the public generally, those beneficial uses for which parks are maintained. The parks of our city are located in many places widely scattered within its boundaries and when it is proposed to use them in the exercise of the right of free speech or assembly it seems reasonable that the Park Commissioner should know about it in advance and take such precautionary measures as are reasonably necessary to preserve the beauty and utility of the parks and protect the public in the use and enjoyment thereof. The display of placards, freely and indiscriminately, without some regulation following advance notice which the requirement of a permit would provide, has a direct bearing upon the comfort, convenience and safety of those using the parks. There is also the probability of the accumulation of litter in the parks after the use of placards. The primary purposes in the maintenance and control of parks — the health, recreation and welfare of the community they serve — and the proprietary character of such maintenance and control justify the conclusion that a distinction should be made between them and ordinary city streets, so that what would be considered unlawful restriction upon the right of free speech and assembly in the case of streets is not necessarily unlawful, at least as applied to parks proper as distinguished from parkways, boulevards and roads comprised within parks.

The point is made that the requirement of a permit lodges a discretion in the issuing authority which may be abused. We think it unreasonable to assume that the official to whom application is made will act arbitrarily and refuse to grant that which is legally due. The presumption is that he will do his full legal duty. There is nothing in the regulation by way of standard of action as in the *Hague case* (307 U. S. 496, *supra*), which gives the commissioner a discretion to approve or disapprove the granting of a permit. On its face it does not purport to restrict the right of free speech or assembly except insofar as the requirement of a permit may be considered regulation which effects restriction. The record before us is devoid of any proof that the Park Commissioner by virtue of his authority under the regulation actually did anything which in the slightest degree

restricted appellants in the exercise of the rights of free speech and of assembly. It is not contended that the manner of enforcement or operation of the regulation constitutes an invasion of appellants' constitutional rights.

In the *Davis* case (167 U. S. 43, *supra*) the court had under consideration an ordinance of the City of Boston substantially similar to the regulation involved herein. It was there held that it did not violate the Fourteenth Amendment to the Constitution of the United States. It is true that up to that time, and for some time thereafter, the Supreme Court had not yet incorporated the right of free speech guaranteed by the First Amendment as among the personal rights and liberties protected by the due process clause of the Fourteenth Amendment from impairment by the States. Yet this case has never been overruled by the Supreme Court, although it was distinguished in the *Hague* case (*supra*). Just as the ordinance in the *Davis* case (*supra*) was a general measure to promote the public convenience in the use of the parks so can the same be said for the regulation under attack here.

In our opinion, the regulation under consideration does not inherently and on its face restrict the right of free speech or assembly and accordingly we deem it constitutional.

The judgments are affirmed.