### CITY OF HUDSON v. FLEMMING.

(Supreme Court, Appellate Division, Third Department. June 29, 1910.)

1. LICENSES (§ 6*)—OFFICERS—DELEGATION OF POWER—VALIDITY.

If the duties of a milk inspector or agent of the board of health in issuing licenses to sell milk are purely ministerial or executive, the delegation by the board of the power to issue such licenses may be sustained, but, where the delegated duty involves an act of judgment or discretion, it cannot be conferred by the board.

[Ed. Note.—For other cases, see Licenses, Dec. Dig. § 6.*]

2. LICENSES (§ 6*)—OFFICERS—DELEGATION OF DUTY—VALIDITY.

The determination whether rules of the board of health requiring stables to be kept clean and well ventilated; requiring the room where the milk is stored to be pure and wholesome and free from contaminating

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

odors; and other regulations, to be complied with in a manner satisfactory to the agent of the board of health, are complied with by an applicant for a license to sell milk—requires the exercise of judgment and discretion, and is not merely ministerial, so that the delegation of the power to issue the license to an agent of the board of health is invalid.

[Ed. Note.—For other cases, see Licenses, Dec. Dig. § 6.*]

3. HEALTH (§ 20*)—OFFICERS—DELEGATION OF POWERS—STATUTORY PROVISION.
Public Health Law (Consol. Laws, c. 45) § 21, requiring every local board of health to make such regulations as they may deem necessary for the preservation of life and health, and execution and enforcement of the public health law in the municipality, does not give such boards authority to delegate power to an agent in cases where the exercise of judgment and discretion is required.

[Ed. Note.—For other cases, see Health, Dec. Dig. § 20.*]

Kellogg and Houghton, JJ., dissenting.

Appeal from Columbia County Court.

Action by the City of Hudson against William H. Flemming. From the judgment in favor of plaintiff, defendant appeals. Reversed.

Argued before SMITH, P. J., and KELLOGG, COCHRANE, SEWELL, and HOUGHTON, JJ.

John L. Crandell, for appellant.
Samuel B. Coffin, for respondent.

COCHRANE, J. The defendant appeals from a judgment against him of $150 damages besides costs; being the amount of 10 penalties of $15 each, alleged to have been incurred on 10 successive days for selling milk in the city of Hudson in violation of an order or ordinance of the board of health of said city prohibiting such sales without a license. Defendant admits that he sold milk in contravention of the said ordinance, but he challenges the validity of the same, and one of the grounds of his challenge is that the board of health has unlawfully delegated its power or authority to grant such license. The first three sections of the ordinance so far as material to this discussion are as follows:

"Section 1. No person, firm or corporation shall sell, peddle or deliver milk or cream within the city of Hudson, unless and until he shall first have obtained a license so to do from this board of health, as hereinafter provided. Any person violating this section shall incur a penalty of $15.00 for each offense.

"Sec. 2. Every person, firm or corporation applying for a license as mentioned in section 1, shall do so upon a blank furnished by the city clerk; said application shall state his name, residence and farm or other place where his cows are kept and maintained, and the name and residence of any person or persons from whom applicant shall, at the time, be purchasing milk or cream to be sold within said city, and such other information relating to the source of supply and quality of the milk or cream to be sold as this board may require. * * *

"Sec. 3. Upon any application being made to said clerk for a milk dealer's license, it shall be referred to the milk and dairy inspector, or other authorized agent of this board of health, who shall investigate the conditions under which the milk or cream is being produced on the farm named in same application and at the dairy store, or other place in said city, if any there be, where said milk is to be handled in said city, and if he reports that the milk

or cream is being produced or handled according to the rules and regulations of said city, and upon the payment to said clerk of the license fee hereinafter provided for, the clerk shall issue a license to said applicant. Said license fee shall be paid by the clerk to the city treasurer of said city."

The fair and reasonable construction of this ordinance requires us to hold that the board has delegated its licensing power to a "milk and dairy inspector or other authorized agent" appointed by itself. A system has been devised whereby an application for a license is to be made to the city clerk who furnishes the necessary blank therefor. Such application is then referred to the "milk and dairy inspector or other authorized agent" who investigates the conditions under which the milk is being produced "and if he reports that the milk or cream is being produced or handled according to the rules and regulations of said city" the clerk shall issue the license upon payment to him of a fee provided therefor. The system thus devised works automatically between the clerk and the inspector and from the inspector back to the clerk. The board of health may have no information or knowledge as to the application nor whether it has been granted or refused. That function has been conferred upon the inspector. His report is made final and conclusive, and on his recommendation the clerk issues a license without any consideration thereof by the board. If, on the other hand, the inspector withholds his recommendation there seems to be no way provided whereby his decision may be reviewed or the matter brought before the board of health for its determination. In other words the inspector or agent designated by the board has been made the licensing officer, and he is vested with the sole and exclusive power of granting licenses.

If the duties of the inspector or agent in this respect are of a purely ministerial or executive nature such delegation of power on him by the board of health may be sustained. The rule, however is well settled that if such delegated duty involves an act of judgment or discretion, and is not merely ministerial, such duty cannot be conferred by the board or body on whom it primarily rests. Birdsall v. Clark, 73 N. Y. 73, 29 Am. Rep. 105; Matter of Industrial Savings Bank, 75 N. Y. 388, 393; Phelps v. Mayor, etc., of New York, 112 N. Y. 216, 19 N. E. 408, 2 L. R. A. 626; Thompson v. Schermerhorn, 6 N. Y. 92, 55 Am. Dec. 385; People ex rel. Board of Charities of Utica v. Davis, 15 Hun, 209; Burke v. Burpo, 75 Hun, 568, 27 N. Y. Supp. 684. The legal maxim is potestas delegata non est deleganda. This rule has been particularly applied in reference to the licensing power. In 28 Cyc. 696, it is stated as follows:

"Where the power is conferred on a municipal corporation to license any calling or business, it cannot delegate such power to any person or authority. Nor can the municipal council, where the power to license is given by statute directly to it, delegate such power to any city official."

We are therefore led to a consideration of the duties of the inspector or agent in reference to the matter of licenses.

From the third section of the ordinance above quoted it appears that such inspector or agent is to "investigate the conditions under which the milk or cream is being produced," and to determine whether "the milk or cream is being produced or handled according to the rules

and regulations of said city." Such "rules and regulations" are enumerated in the fourth section of the ordinance. They are 17 in number. Among them are the requirements that the room in which the herd of cows is kept shall be well ventilated and lighted and have a dry, well drained floor; that the ceiling and side walls shall be kept free from dust, cobwebs and filth; that no musty or dirty litter shall be used for bedding; that the food and water given the herd shall be pure, wholesome, and abundant; that the herd shall be free from stable filth and loose dust; that the milkers shall have clean hands and clothing at the time of milking; that the milk immediately after being drawn shall be removed to a well ventilated milkroom; that the air of the room in which the milk is stored shall be pure and wholesome, and free from contaminating odors; that the strainer shall be renewed as often as necessary to be efficient; that vehicles from which milk is delivered shall be kept clean in a manner satisfactory to the milk and dairy inspector or other authorized agent; that they shall be kept covered to protect the milk from the rays of the sun in a manner also satisfactory to the milk and dairy inspector or other authorized agent; that no person who has come in contact with any infectious or contagious disease shall handle milk to be sold in the city. It seems to me that the foregoing duties cannot be classed as ministerial, but require the exercise of considerable judgment and discretion. There is no fixed standard to which every case can be referred. Conditions surrounding each application differ. Whether or not there is a fair and reasonable compliance with the rules and regulations as above set forth cannot be determined by applying thereto a mathematical rule of computation or other arbitrary or fixed standard. Questions involving the wholesomeness of food and drink, the proper amount thereof, the degree of ventilation and light, the purity of the atmosphere, the extent of the cleanliness which is observed, the sanitary appliances required, the exposure to infectious or contagious diseases, and other matters above enumerated are clearly matters of judgment. In respect to some of the regulations it is expressly stated that they are to be "satisfactory to the milk and dairy inspector or other authorized agent." The case therefore falls within the rule above enunciated that duties involving judgment and discretion may not be delegated.

The learned counsel for the city, however, contends that the board of health may delegate these duties because authorized to do so by legislative enactment. The power of local boards of health is derived from section 21 of the public health law (chapter 45 of the Consolidated Laws) which provides in part as follows:

"Every such local board shall make and publish from time to time all such orders and regulations as they may deem necessary and proper for the preservation of life and health and the execution and enforcement of this chapter in the municipality."

Undoubtedly such boards have great powers and properly so when it is considered that their duties involve the preservation of life and health. Granting, however, to the board all the power which it can claim from the above-quoted statutory provision such power is never-

theless circumscribed by the requirements that the orders and regulations made by the board must be "necessary and proper for the preservation of life and health." Can it be said that such a delegation of duty as has been pointed out is "necessary and proper for the preservation of life and health?" I think the answer must be in the negative. I think we must go further and say that it is both *unnecessary* and *improper* that such duties as have been enumerated should be devolved by the board upon an agent or employé, and that such delegation of duty does *not* tend to the "preservation of life and health." Clearly the judgment of a board or body of men officially selected with reference to their peculiar fitness for the duties which are conferred upon them is presumptively better than the judgment of one man selected by such board to perform such duties. "The power of governing is a trust committed by the people to the government, no part of which can be granted away; and this doctrine, usually announced in regard to a sovereign state is equally true of a municipality in regard to its governmental functions, which are committed to it by the state for the public weal. The rule is generally applied to such municipal functions as are regarded as mandatory. The trust must be faithfully performed for the benefit of the public, and any attempt to barter or surrender it is unauthorized and void." 28 Cyc. 276. I think it is the right of the city itself no less than the right of the applicants for license that when such an application is made the board shall pass on the question and give to both parties its official judgment as to the merits of the application. Undoubtedly the board may designate an inspector or agent to make an investigation and report his conclusions thereon. The board cannot be expected to visit the farms of the various milk sellers. The inspector however should report to the board, and that body should consider his report in connection with any other evidence or facts placed before it and should exercise its own judgment as to whether or not a license should be granted. The difficulty is that it has abdicated its power in this respect, and made the judgment of its inspector conclusive. The record does not disclose, and we have no means of knowing, what the actual practice of the board is in reference to such matters. That is immaterial because the validity of the ordinance must be determined from its phraseology. We do not criticise the strictness or severity of the regulations surrounding the production and delivery of milk. They should be liberally sustained in accordance with the humane and beneficent purpose which they were designed to accomplish. Our criticism, on the other hand, is against the method of the application of those regulations and that the board has relaxed its own scrutiny, and has divested itself of its duties in this respect. On the same principle if the board can delegate this duty to an agent it may parcel out all of its duties to different persons or confer all its duties upon any one person designated by itself, and thus reserve to itself only the responsibility of making suitable appointments. This would clearly thwart the purpose of the statute.

Our conclusion, therefore, is that the board of health has improperly delegated its power to grant licenses and that the defendant

was under no legal obligation to procure a license from a person to whom such power had been improperly delegated.

The judgments of the county court and city court must therefore be reversed, with costs. All concur, except KELLOGG and HOUGHTON, JJ., who dissent.