## SUPREME COURT — SPECIAL TERM — MONROE COUNTY.

### November, 1916.

# THE PEOPLE ex rel. HUGO C. SCHULZ v. R. ANDREW HAMILTON.

### (97 Misc. 437.)

CITY OF ROCHESTER—CHARTER OF—STATUTES—PRESERVATION OF PUBLIC HEALTH.

The State may make such reasonable regulations as it deems necessary to protect and preserve the public health and may delegate that power to local authorities.

The charter of the city of Rochester and the existing ordinance of the city relating to the sale of milk empower the commissioner of public safety to impose reasonable restrictions in the interest of public health as a condition of obtaining a license to sell milk and cream in the city and authorize him to devolve upon the health officer the administrative duty or seeing that the requirements are given effect.

This power is not in conflict with the general statutes of the State or with the State Sanitary Code both of which reserve in the city the power to make reasonable regulations relating to the public health of the people of the city not inconsistent with such general statutes or regulations.

The common council has not attempted to delegate its function with respect to the conditions under which a license to sell milk and cream may be sold by authorizing the health bureau to issue the license but reserved in the commissioner of public safety the power to impose reasonable conditions; nor has the commissioner of public safety in this instance delegated any of his discretionary power to the health officer.

The health authorities of the city are not required to wait until an epidemic of typhoid has broken out before taking precautions against it but in the exercise of a reasonable judgment may anticipate such a condition and may and should make all reasonable efforts to perform the duty imposed upon them by statute and to take all

reasonable precautions to protect the public health before the emergency arises.

The degree of precaution necessary to protect and preserve the public health under normal conditions in the absence of an emergency calling for extraordinary measures is to be determined by circumstances and each requirement must be passed upon in the light of the circumstances and conditions existing at the time of its adoption.

The requirement of a blood test as a condition for a license to sell milk in the city is a reasonable condition since it imposes no serious inconvenience upon the applicant and it is a matter of common belief that typhoid is a contagious disease and that such a test will reveal whether or not the person whose blood is examined has had typhoid and is a carrier of typhoid and the transmission of this disease may thus be avoided by suitable precautions.

The requirement of a blood test as one of the conditions for a license among others is one resting in the sound discretion and good judgment of the commissioner of public safety in the absence of an ordinance of the common council limiting his authority and is not subject to review by the courts where the requirement appeals to the courts as reasonable and just, necessary to protect the public health and neither capricious, arbitrary nor unjust.

(Syllabus by the court.)

APPLICATION for a writ of mandamus to compel the issuance of a license to sell milk.

The relator is a milk dealer who has heretofore had a license to sell milk in the city of Rochester, but was denied such license for the year 1916 because he refused to submit to a blood test intended to show whether or not he had had typhoid fever and was a carrier of typhoid germs. The health officer refused to issue the license on the ground that it was necessary for the preservation of public health that all applicants for milk licenses should be required to submit to the test referred to. The relator appealed to the commissioner of public safety who determined that the health officer should issue licenses to those who submitted to the blood test and were found not to be carriers of typhoid and thereupon the commissioner of public safety instructed the health officer to notify the relator to that effect. It was determined that the requirement as to inoculation should

not be insisted upon by the health officer, but that the common council should be requested to pass an ordinance requiring such inoculation.   Notice was given to the relator who thereupon appeared before the commissioner of public safety and demanded that a license be issued to him and the commissioner told him that he would not direct a licence to be issued unless relator submitted to the blood test and was not found to be a carrier of typhoid.   The relator refused to submit to such a blood test and this motion for a mandamus was thereupon made by him.

*John F. Kinney,* for plaintiff, for motion.

*Benjamin B. Cunningham, Corporation Counsel,* for defendant, opposed.

RODENBECK, J.:

The State having the ultimate power to protect and preserve the public health has the right to impose by statute reasonable regulations to accomplish that purpose (Fischer v. St. Louis, 194 U. S. 361; Jacobson v. Massachusetts, 197 id. 17; Lieberman v. Van De Car, 199 id. 552; Matter of Viemeister, 179 N. Y. 235; Matter of Walters, 84 Hun, 457, 460) and may delegate that power to local authorities for its more convenient exercise in political subdivisions of the State.   (Fischer v. St. Louis, *supra;* Jacobson v. Massachusetts, *supra;* People ex rel, Lieberman v. Van De Car, 175 N. Y. 440, 444, 445; affd. 199 U. S. 552; People ex rel. Shelter v. Owen, 66 Misc. Rep. 24; State v. Nelson, 68 N. W. Rep. 1066; 17 L. R. A. [N. S.] note 709.)

In this case the State has delegated that power to the city authorities, not by the Public Health Law or the State Sanitary Code, but by the charter of the city.   The Public Health Law and the State Sanitary Code expressly reserve in the city the
19

powers granted to the city by the charter which are not inconsistent with that law and code. (Laws of 1913, chap. 559, § 2c.) The language of the State Sanitary Code with reference to the permission to engage in selling milk and cream which is urged as an attempted delegation by the public health council is a mere reservation in the local authorities, there designated as the health officer, of the power vested in the local authorities to impose further conditions (Sanitary Code, chap. 3, reg. 1), and the code expressly provides that the health authorities of any municipality may in their discretion increase the stringency of any of its regulations or add to them in any way not inconsistent with the provisions of the code. (Id., reg. 14.) If the local authorities do not possess that power by independent legislation they do not secure it by the Sanitary Code as the public health council is given no power to delegate its *quasi* judicial functions with reference to determining conditions upon which a license to sell milk or cream may be granted.

But the Legislature by the charter of the city has expressly conferred authority, with respect to the protection and preservation of the public health of the people of the city subject to limitations imposed by the Public Health Law or other statutes and the Sanitary Code, upon the common council, commissioner of public safety and the health officer. (Laws of 1907, chap. 755.) The common council may pass general rules and regulations on this subject and thus control or limit the action of the commissioner of public safety and the health officer except as they may be given specific authority by any provision of the charter. (Id., § 340.) If the common council does not act in the matter or, having acted, has not expressly or impliedly limited the action of the commissioner of public safety and the health officer, the latter may take such reasonable action as they may deem the preservation and the protection of the public health require. In this instance the common council has merely authorized the health bureau to issue licenses to sell milk and

cream without prescribing the conditions or indicating that any conditions are to be imposed and the commissioner of public safety and the health officer are, therefore, authorized under the power granted to them by the chapter to preserve and protect the public health, to impose such conditions as may be uniform, reasonable and just. The common council may control, limit or prohibit the commissioner of public safety and the health officer in this respect, but it has not done so, and the latter are now required in the interest of the public health to exercise the authority vested in them by the charter.

This authority and responsibility primarily rest upon the commissioner of public safety. The charter vests in the department of public safety, limited by general rules and regulations of the common council, the jurisdiction, care and responsibility of the health of the people of the city subject of course also to any limitations or restrictions imposed by any general legislation or State regulations. It is for the commissioner of public safety, therefore, the common council not having done so, to prescribe the requirements upon which a license shall be issued, and his requirements, unless arbitrary, capricious or unreasonable, must be observed.

The health bureau is made a part of the department of public safety and the health officer is made its executive officer and as such he has the active supervision and responsibility of the health of the community and the duty of seeing that the laws and regulations of the State, the ordinances of the city and the orders of the commissioner of public safety are observed and of making such recommendations for the preservation and protection of the public health as may seem necessary. He may be intrusted with such powers and duties, in addition to those given to him by law, as the commissioner of public safety may impose upon him, but the commissioner of public safety under this language cannot relieve himself of any duties requiring his

personal judgment and discretion.    (City of Hudson v. Flemming, 139 App. Div. 327.)

In this instance the question of delegation by the common council does not arise as the ordinance of the common council did not purport to delegate to the health bureau any discretionary power to issue licenses but vested in it ministerial functions merely; nor does the question of delegation by the commissioner of public safety arise as the commissioner himself required this relator to submit to a blood test and denied him a license because of his refusal to comply with the condition imposed upon his right to sell milk and cream.    The commissioner of public safety has asked him to submit a drop of his blood for microscopic examination for evidences of typhoid, as other applicants have done, in order to make sure that he is not a carrier of typhoid and this he has refused to do although but slight inconvenience will be occasioned to him thereby.

This test is but a part of the precautions among many others deemed necessary to provide for the people of the city a clean, pure and wholesome supply of milk and cream free from disease germs, and unless it can be said to be unreasonable and unjust it must be observed by those applying for a license to engage in the business of selling milk and cream to their possible inconvenience but for the benefit of the health of the people of the city.

The power to impose suitable and reasonable conditions for the sale of milk and cream in the city being in the commissioner of public safety, in the absence of any restrictive ordinances of the common council, statutes of the State or sanitary provisions of the public health council, he may act in anticipation of any emergency and may under normal conditions of public health provide such measures as he may deem reasonably necessary to protect and preserve the public.    He is not required to wait until an epidemic arises but may anticipate such a condition and may guard against it by such reasonable precautions as

he deems necessary. The duty of the commissioner of public safety to foresee dangers to public health and to provide against them is quite as important, if not more so, than that of eradicating an epidemic after it has arisen.

The character of the precautions that may be reasonably necessary in normal conditions of public health depends upon the circumstances and each requirement must be passed upon in the light of the conditions existing at the time of its adoption. Extraordinary measures adapted to emergencies are not suitable and would not be regarded as reasonable at ordinary times. Each requirement must be adapted to the circumstances of the condition and times and must not be unreasonable or oppressive. Good judgment and common sense must be employed and when the requirements meet this test and that of sound reason they, will be upheld. It has been held, for instance, that dairy and cow stables may be prohibited within the limits of a city (Fischer v. St. Louis, 194 U. S. 361); that it is not a denial of the equal protection of the law to single out the milk business for regulation and that the State has the right to regulate the milk business or any occupation which may become unsafe or dangerous when unrestrained (Lieberman v. Van De Car, 199 U. S. 552, 558, 563); that vaccination may be required as a condition of attendance in public schools (Jacobson v. Massachusetts, 197 U. S. 11; Matter of Viemeister, 179 N. Y. 235; Matter of Walters, 84 Hun, 457); that regulations may be made requiring a separate room for the storage of milk and the cleansing of utensils (People ex rel. Shelter v. Owen, 66 Misc. Rep. 24) and that a tuberculene test of cows may be required as a condition of selling milk. (State v. Nelson, 68 N. W. Rep. [Minn.] 1066. The imposition of a blood test is not unlike some of these requirements and presents no greater inconvenience or more serious interference with personal rights.

The present condition of the public health of the city with respect to typhoid is not abnormal and still the requirement of

a blood test as a condition for a license to sell milk and cream
seems to be a fair and reasonable precaution to protect the
public against any increase of typhoid. Milk is a particularly
sensitive product produced under conditions which if not regu-
lated and controlled may carry and disseminate the germs of
typhoid or other diseases and spread them in the community.
It is the chief food of infants and lies at the basis of their
health and strength. It may be heated, sterilized or pasteurized
but even then contact with unclean utensils or unclean human
beings may make it the carrier of disease germs. Unlike other
articles of food it cannot be washed and otherwise cleansed in
the home. The impurities may be hidden from sight and thus
a sense of security engendered which may render it a still more
serious menace to health. Under these conditions it would
seem to impose no unreasonable hardship upon a dealer in milk
or cream to require him to submit to a blood test to make sure
that he has not had typhoid and is not a typhoid carrier.

That typhoid is a contagious disease and may be transmitted
by one afflicted with the disease is a matter of common knowledge
and the court will take notice of that fact without proof.
(Hunter v. New York, O. & W. R. R. Co., 116 N. Y. 615, 623;
People v. Lochner, 177 id. 169; Jones v. United States, 137
U. S. 202, 216; Matter of Viemeister, 179 N. Y. 235, 241.)
The court will also take notice of the fact that an examination of
a drop of blood will reveal whether or not the person from whom
it has been taken has had typhoid. This may not be universally
held by scientific men or universally believed by the people, but
until science disproves the value of the test it will be accepted
by the courts as true. (Matter of Viemeister, *supra,* and other
cases cited above.)

The imposition of this test with respect to this particular
occupation and the requirement of this and any other test in
any other occupation which may affect the public health rests
in the sound discretion of the State or local authorities in whom

the discretion to pass upon the subject has been vested. It is not an arbitrary or capricious discretion but one which under the circumstances is reasonable and just. (People ex rel. Lodes v. Dept. of Health, 189 N. Y. 187; People ex rel, Cumisky v. Wurster, 14 App. Div. 556; People ex rel. Dorr v. Thatcher, 42 Hun, 349; People ex rel. Shelter v. Owen, 66 Misc. Rep. 24; People ex rel. Moses v. Gaynor, 77 id. 576; 17 L. R. A. [N. S.] note 709.)

This rule does not infringe upon the civil right of the individual. Government has been instituted among men for their mutual protection and no man has the right to make himself or his business a menace to the public health. Take away the regulation and control of individual rights and organized society would break up into its original elements. Under organized society all rights are subject to such reasonable regulations as may be deemed by the governing authority essential to the society, health, peace, good order and morals of the community. It is a part of the social compact that government shall be maintained for the common good for the protection and safety of property and the happiness of all the people, and that of any particular individual, class or group of men must give way to the welfare of all. (Jacobson v. Massachusetts, *supra*.)

It is important, therefore, to the whole community that the supply of milk and cream should be kept clean, pure and wholesome and should not be contaminated with impurities, or infected with disease, and it is the duty of the health authorities to see that this is accomplished by the establishment of such reasonable regulations as may be necessary to meet existing conditions or to ward off impending dangers to the public health, and in imposing a blood test as a condition to a license to sell milk and cream in the city the commissioner of public safety and the health officer acted within the scope of their authority and applicants for such a license should co-operate with the public authorities and assist rather than oppose reasonable

efforts to provide pure and wholesome milk and cream for the people of the city. The requirement of a blood test of an applicant for a license is just a step and a small one in the direction of the protection of the public health, but every reasonable effort made in this direction should be encouraged so long as it does not unreasonably infringe upon the rights of the individual. The application is denied, with costs.

Application denied, with costs.