## SUPREME COURT — SPECIAL TERM — ONONDAGA COUNTY.

### February, 1920.

## THE PEOPLE EX REL. ECONOMUS v. JOHN J. COAKLEY.

(110 Misc. 385.)

HABEAS CORPUS—WHEN WRIT OF, DISMISSED—CITY OF UTICA—ORDINANCES —LICENSES.

The common council of the city of Utica has the right by an ordinance to delegate to the mayor its legislative power to grant or withhold a license to permit a pool or billiard room, bowling alley, etc., to be conducted as a public place of business for profit.

A writ of habeas corpus sued out by relator who, charged with the violation of such an ordinance, a misdemeanor, challenged its validity, dismissed and relator remanded.

RETURN on a writ of habeas corpus.

*Nicholas G. Powers* for relator.

*Fred F. Scanlan, Corporation Counsel,* for defendant.

Ross, J.:

The defendant makes return to the writ that he holds the above-named Nicholas Economus under and by virtue of a warrant issued by the clerk of the City Court of Utica for the arrest of the said Nicholas Economus, in that the said Nicholas Economus is guilty of the crime of wrongfully and feloniously violating Ordinance 383 of the year 1919 of the city of Utica, a misdemeanor, in that, on or about the 4th day of January, 1920, the relator conducted a public place of business for profit, a pool and billiard parlor, at 167 Genesee street, Utica, N. Y., without filing a surety bond and obtaining a license, and did permit said premises to remain open between the hours of 12 o'clock midnight, January 3, 1920, and 6 o'clock A. M., January 5, 1920, viz., did permit said premises to remain open for business on Sunday, January 4, 1920.

The ordinance in question provides:

Section 1. "No public pool or billiard or pocket billiard room, public bowling alley or public place of any description in which pool or billiards or pocket billiards are played or which includes a bowling alley on the premises or which includes any apparatus or paraphernalia for the playing of pool or billiards or for bowling, and which is conducted as a public place of business for profit, shall be permitted in the City of Utica unless a license therefor is granted annually to the proprietor thereof by the Mayor of the City of Utica."

Section 2 provides for the payment of a license fee of $25 and the deposit of a bond of $1,000 in the office of the treasurer of the city of Utica.

Section 3 provides for the issue of a suitable license for framing purposes, which is unimportant.

Section 4 provides: Subdivision (A) for the closing of pool rooms on Sunday; subdivision (B) prohibits the allowing of a child actually or apparently under the age of sixteen years, unaccompanied by its parents, in the pool room or any place adjacent thereto; subdivision (C) is as follows: " Who vio-

lates any of the provisions of section one of this ordinance;" and the section concludes with the statement: "Is guilty of a misdemeanor, and upon conviction thereof, if an individual, shall be punishable as follows: First offense by a fine of one hundred and fifty dollars;" and further provisions in regard to subsequent convictions.

Section 5 provides when the mayor may refuse to issue a license.

Section 6 has no relation to the matters herein involved.

Section 7 provides that the ordinance shall take effect January 1, 1920.

The relator challenges the validity of the aforesaid ordinance upon various grounds, with others that the common council of the city of Utica exceeded its powers in that it enacted an ordinance relative to Sabbath breaking, which provision is repugnant to the laws of the State of New York; that the common council unlawfully delegated its powers to the mayor to grant or withhold a license, a power which relator claims is judicial in its character and can only be exercised, if at all, by the common council itself; that the penalties provided for violation of the ordinance are excessive, and that the provisions of the ordinance as an entirety are unreasonable.

The attorneys upon the argument of this motion, and in their briefs, have emphasized the question as to the authority of the common council of the city of Utica to pass and enforce an ordinance relating to Sabbath breaking, and the relator in this regard relies upon the case of People ex rel. Kieley v. Lent (166 App. Div. 550; affd., 215 N. Y. 626), which was the case of an exhibition of moving pictures on Sunday. If the view which I take of the matters presented is correct, the question of Sunday observance is not presented.

Section 4 of the aforesaid ordinance provides: "(A) Who permits premises so licensed to remain open between the hours of twelve o'clock midnight Saturday and six o'clock A. M. Monday of each week;" (B) a provision in reference to allow-

ing children under the age of sixteen years on the premises; (C) "Who violates any of the provisions of section one of this ordinance; is guilty of a misdemeanor and upon conviction," etc.    Section 1 referred to provides that no person shall be permitted to carry on the business of conducting a pool and billiard room unless a license is granted annually to the proprietor thereof by the mayor of the city of Utica.    The relator in this case was charged in the warrant under which he is held that he wrongfully and feloniously did " conduct a public place of business for profit, a pool and billiard parlor, at 167 Genesee street, Utica, N. Y., without filing a surety bond and obtaining a license," and then follows a provision in regard to Sunday observance, so that the question here relates solely to the authority of the common council to enact and enforce the aforesaid ordinance, and not the question of the relator's violating any of the provisions relating to the duties of a license holder. If the common council of the city of Utica had the power to pass the ordinance in question, the relator is properly held under the warrant invoked by the defendant; if it did not possess such authority, no further question is presented.

*Severability of provisions of the ordinance.*—Assuming, for the purposes of this case only, that the provision of the aforesaid ordinance in regard to the Sunday observance is invalid, it is clearly severable and does not affect the validity of the balance of the ordinance.    An analogous case was presented in Matter of Cullinan (40 Misc. Rep. 583), Kenefick, J., Erie County Special Term, 1903.    This was an application, based upon a verified petition, containing positive averments of violations of the Liquor Tax Law, in which the certificate holder appeared by attorney and interposed the objection that the provisions of subdivision 2, section 28, of the Liquor Tax Law requiring him to file a verified answer tendering an issue, and in default of such answer directed the revocation of his certificate, is unconstitutional and therefore void for the reason that he cannot be compelled to answer under oath in a proceeding

to forfeit his property.    This objection was sustained upon the decision previously rendered in the Second Department, but held that the unconstitutionality of the provision referred to did not nullify the whole scheme of revocation, but left the same unimpaired as established in its original form.

In Duryee v. Mayor (96 N. Y. 477, 491), Chief Judge Ruger uses the following language: " If effect can consistently with the general legislative intent be given to such parts of a statute as are not in conflict. with paramount authority and are within the authority of the body enacting them, it is the duty of a court, while rejecting its unconstitutional and unauthorized parts, to enforce the remaining provisions of a law which are within the legislative power of its authors.    When part only of a statute or a section is unconstitutional, that part only is void, unless the other provisions are so dependent and connected with that which is void, that it cannot be presumed that the legislature would have enacted the one without the other." (People ex rel. McPike v. Van de Carr, 91 App. Div. 20, 26; affd., 178 N. Y. 425; Chapman v. Selover, 172 App. Div. 858, 862; revd., 225 N. Y. 417, upon other grounds.

In Yellow Taxicab Co. v. Gaynor (82 Misc. Rep. 94; affd., 159 App. Div. 888, 893; affd., in the case of Waldorf-Astoria Hotel Co. v. City of New York, 212 N. Y. 97), on page 101, Seabury, J., on whose opinion the case was affirmed by the Appellate Division, First Department, uses this language: " In determining the questions presented the court must keep in mind the well-settled principle of law that the fact that there may be void provisions of a statute or ordinance furnishes no reason for declaring the whole statute or ordinance void.   Some of the provisions of the ordinance attacked upon these motions may be open to question.    *   *   *   The validity of these provisions is in no way involved in these actions, and the court should not go out of its way to anticipate controversies which may not arise."    (Sautter v. Utica City Nat. Bank, 45 Misc. Rep. 15, decision by the late Judge Rogers.    Judgment

affirmed on opinion of Rogers, J., 119 App. Div. 898; affd., 193 N. Y. 661.)

*Delegation of authority.*—The relator claims that if the common council had the power to require a license, that it could not delegate to the mayor the discretionary power given that official by the provisions of the ordinance in question. This claim is upon first impression apparently sustained in the leading case of Thompson v. Schermerhorn (6 N. Y. 92), which has been followed by a large number of cases, and the relator cites the case of City of Hudson v. Flemming (139 App. Div. 327).

I only refer in this connection to these two cases, as such reference will indicate the line of demarkation between the principle invoked as to a delegation of discretionary powers and the facts presented in the instant case.    The Schermerhorn case is distinguished in City of Brooklyn v. Breslin (57 N. Y. 594), in which it is stated: " There it appeared that the common council of that city were empowered by law to make by-laws and ordinances directing streets to be pitched, leveled, etc., *in such manner as the city superintendent, under the direction of the committee of roads of the common council should direct and require.*"    (The foregoing italics are as printed in the reported case.)    It passed a law or ordinance directing a part of State street in that city to be pitched, leveled and paved to the center thereof in such manner as the city superintendent, under the direction of the committee of roads of the common council, should direct and require, and it was held that the ordinance was void because the common council did not themselves prescribe in what manner the improvement should be made, and that they could not delegate that power to a city official or committee.    This it had no power to do.

In the case of City of Hudson v. Flemming, the relator was convicted of violations of an ordinance of the local board of health of the city of Hudson, which prohibited the sale of milk without a license from said board.    The ordinance in question

provided that no one should sell milk without obtaining a license from said board of health, and provided penalties for violation of same.    Section 3 of said ordinance provided that upon an application being made to said clerk for a milk dealer's license, it should be referred to the milk and dairy inspector, or other authorized agent of this board of health, who shall investigate the conditions under which the milk or cream is being produced, and if he reports that ·the milk or cream is being produced or handled according to the rules and regulations of said city, and upon payment to said clerk of the license fee, the clerk shall issue a license to said applicant; and it was held that " The fair and reasonable construction of this ordinance requires us to hold that the Board has delegated its licensing power to a ' milk and dairy inspector, or other authorized agent ' appointed by itself.    *    *    *    If the duties of the inspector or agent in this respect were of a purely ministerial or executive nature, such delegation of power to him by the Board of Health may be sustained.    The rule, however, is well settled that if such delegated duty involves an act of judgment or discretion, and is not merely ministerial, such duty cannot be conferred by the Board or body on whom it primarily rests."    The power of the local board of health was derived from section 21 of the Public Health Law, which reads in part as follows:   " Every such local board shall make and publish from time to time all such orders and regulations as they may deem necessary and proper for the preservation of life and health, and the execution and enforcement of this chapter in the municipality."

It seems to me to be otherwise as to the authority reposed in the common council of the city of Utica.    Its function in this regard is legislative;  to enact ordinances not inconsistent with law for the preservation of good order, for the peace, health and safety of its inhabitants.    An examination of the legislative authority under which the common council of the city of Utica derives· its power to act is appropriate in this connection.

Section 35 of the charter of the city of Utica (Laws of 1862, chap. 18), and which, so far as I have been able to discover, is unrepealed, provides as follows: " The common council shall have the care, management and control of the property of the city and its finances; it shall have power to ordain, alter, modify and repeal ordinances not repugnant to the constitution and laws of this state, such as it shall deem expedient for the good government of the city.    The preservation of peace and good order, the suppression of vice and immorality, the benefit of trade and commerce, and the health of the inhabitants thereof, *and such other ordinances, rules and regulations as may be necessary to carry such power into effect.*"    (The italics are mine.)

It is also specifically authorized to enact ordinances for the following purposes: " Subdivision 2:  To restrain and prevent and to suppress disorderly and gaming houses, billiard tables and all instruments and devices for gaming."

Section 30 of the Second Class Cities Law reads as follows: " The legislative power of the city is vested in the common council thereof, and it has authority to enact ordinances, not inconsistent with law, for the government of the city and the management of its business, for the preservation of good order, peace and health, for the safety and welfare of its inhabitants and the protection and security of their property;' and its authority, except as otherwise provided in this chapter, or by law, *is legislative only.*"    (The italics are mine.)

I call particular attention to the provisions of the General. City Law, section 19, known as the City Home Rule Act (Laws of 1913):  " Section 19.   General grant of powers—Every city is granted power to regulate, manage and control its property and local affairs and is granted all the rights, privileges and jurisdiction necessary and proper for carrying such power into execution.   No enumeration of powers in this or any other law shall operate to restrict the meaning of this general

grant of power, or to exclude other powers comprehended within this general grant."

It would be difficult to frame a more concise, more comprehensive, more emphatic grant of power to manage and regulate the government of a city in all the particulars essential thereto than is contained in the section just quoted, and the decisions of the courts of this state rendered prior to the enactment of the aforesaid provision (Laws of 1913) can only be upheld in so far as such decisions are in harmony therewith.    But it seems to me that, even before the act of 1913, to which reference has been made, the common council of the city of Utica had the right to delegate the power conferred upon the mayor by the ordinance in question.

(People ex rel. Larrabee v. Mulholland, 19 Hun, 548; affd., 82 N. Y. 324.)    In this case the relator was convicted of a violation of an ordinance passed by the common council of the city of Syracuse in 1877, declaring it to be a misdemeanor for anyone to peddle or deliver milk from any vehicle in the streets of Syracuse without having first been duly licensed by the mayor, as therein provided.    The charter under which the common council of the city of Syracuse acted was chapter 63, Laws of 1857, and provided that the legislative powers of the " City of Syracuse shall be vested in the common council; " and contained a provision authorizing the common council to license certain occupations therein specified, but which did not include the peddling or selling of milk, and authorized the mayor to grant such licenses (Laws of 1857, p. 111) ; and contained (p. 114) the following provision:  " The common council shall have power to make, alter, establish, modify, amend and repeal all such ordinances, rules, fire and police regulations, by-laws and resolutions, which are not in violation of the laws of this State, or of the United States, as they shall deem necessary and proper."    It was held (19 Hun, 549) : The provisions of the charter fully authorized the enactment of the ordinance in question.

(City of Brooklyn v. Breslin, 57 N. Y. 591.)    In this case the charter gave the common council power to authorize the mayor to grant licenses.

(Bradley v. City of Rochester, 54 Hun, 140.)    In this case, as it seems to me, the question is precisely presented.    This action was brought to recover back sums of money paid by the plaintiff and his assignors to defendant for hucksters' license fees, upon the ground that the licenses in question were void for the reason that it assumed to delegate to the mayor an authority given by statute to the common council itself, and which could only be exercised by it.    The ordinance which it was claimed was violated provided that no person should peddle from house to house within the city of Rochester certain commodities therein named without having a license therefor, under penalty of ten dollars for each offense.    Section 2 of the said ordinance provided : " The Mayor of the City of Rochester shall license any proper person to sell as above on a payment therefor of a license fee of fifteen dollars for each wagon employed."    The court says on page 141: " Here is no attempt to delegate to the mayor any authority conferred by the charter upon the common council.    On the contrary, the enactment of the ordinance was a direct exercise by the common council of the authority conferred upon it, viz., to regulate and restrain (by ordinance) the peddling of certain commodities in the streets of Rochester. This the ordinance seeks to accomplish by establishing a system of licenses for such traffic, and prescribing the license fees to be paid therefor.    It does not delegate to the mayor the authority belonging to the common council, but, in the exercise of that authority, imposes upon the mayor a duty appropriate to his office.    The authority conferred upon the common council by statute is not to issue licenses, but to make an ordinance providing for licenses to be issued.    The duty imposed upon the mayor by the ordinance is to issue the licenses thus provided for.    The imposition of that duty upon the mayor is clearly within the authority conferred upon the common council." ·

· (Yellow Taxicab Co. v. Gaynor, 82 Misc. Rep. 95; affd., 159 App. Div. 888, 893.)    In this case, on pages 108-109, Seabury, J., uses the following language:  " Manifestly the board of aldermen cannot itself attend to the work of licensing and inspecting· vehicles and conduct the examination of applicants for drivers' licenses.    The duties which the ordinance confers upon the bureau of licenses are purely administrative in character and not legislative.    The board of aldermen exercised its legislative function in enacting the ordinance.    No discretion is delegated to the bureau of licenses to determine whether or not the ordinance should become operative.    That it should become operative followed as·a matter of course from the fact that it was enacted by the board of aldermen and approved by the mayor, unless the ordinance is itself illegal.

*Reasonableness of the ordinance.*—̇ The ordinance is presumed to be reasonable.    (Matter of Stubbe v. Adamson, 220 N. Y. 459.)

In City of Rochester v. Macauley-Fien-M. Co. (199 N. Y. 207), on page 211, Chase, J., uses the following language: " The common council is thus the judge as to what ordinances it will pass for the safety and welfare of the inhabitants of the city and the protection and security of. their property, and unless an ordinance passed by it is wholly arbitrary and unreasonable it should be upheld.    The necessity and advisability of the ordinance is for the legislative power to determine.    The presumption is in favor of the ordinance."    (People v. New York Edison Co., 159 App. Div. 786; City of Buffalo v. Hill, 79 id. 402; Village of Carthage v. Frederick, 122 N. Y. 268, opinion, Vann, J., p. 274.)

Writ dismissed and the relator remanded.

Writ dismissed.