SALVATORE RIZZO, Plaintiff, *v.* FRED J. DOUGLAS, Individually and as Mayor of the City of Utica, New York, and CLARENCE STETSON, Individually and as Commissioner of Public Safety of the City of Utica, New York, Defendants.

Supreme Court, Oneida County, April (Received September, 1923).

Constitutional law — municipal corporations — validity of ordinance regulating licenses for taxicab drivers — discretionary power in commissioner of public safety to pass upon qualifications of applicants for licenses — temporary injunction against mayor and commissioner of public safety dissolved.

An ordinance of the city of Utica enacted under the authority of section 30 of the Second Class Cities Law making it unlawful for any person to drive or operate any taxicab upon the streets or public places in the city without first securing and having in force and effect a taxicab driver's license issued by the city clerk upon the approval of the commissioner of public safety and providing that an applicant for such a license must satisfy said commissioner " that he is over eighteen years of age; of good moral character; competent to drive a motor vehicle upon the streets of the city of Utica and has a thorough knowledge of the laws of the state of New York affecting or regulating the operation of motor vehicles, the traffic ordinances of the city of Utica and of this ordinance " is not unconstitutional because thereby the commissioner of public safety is clothed with discretionary power to discriminate between citizens; said ordinance fixes a definite standard not of the person himself but of his necessary qualifications.

Said ordinance does not contravene either article 1 of section 6 of the State Constitution or section 1 of the Fourteenth Amendment of the Constitution of the United States, the purport of both of which is to the effect that no person " shall be deprived of * * * property without due process of law or deny to any person within its jurisdiction the equal protection of the law."

A motion for an order of mandamus to compel the commissioner of public safety to issue to plaintiff a license to operate his taxicab upon the streets of the city having been denied the present action was brought to restrain the enforcement of said ordinance or any part thereof against plaintiff and to restrain the municipal authorities from interfering with plaintiff in his occupation as a taxi driver. *Held*, that a motion to dissolve a temporary injunction granted in the action restraining the municipal authorities from interfering with plaintiff in the operation of his taxicab upon the streets of the city will be granted and the complaint dismissed, with costs.

MOTION to dissolve temporary injunction.

*S. J. Capecelatro*, for plaintiff.

*Henry D. Williams*, for defendants.

MARTIN, LOUIS M., J. This is an action brought by the plaintiff against the mayor of the city of Utica and the commissioner of public safety of said city in which the plaintiff asks for an injunction to permanently restrain the defendants from enforcing an ordinance or any provision thereof against this plaintiff which would deprive him of exercising his right to drive and operate a taxicab upon the streets and public highways in the city of Utica, and further to restrain the defendants in their official capacity from interfering with this plaintiff in the discharge of his duties or occupation as a taxi driver.

The plaintiff heretofore applied to this court for a mandamus to compel the defendants to issue a license to the plaintiff to so operate his taxicab, and this motion was denied, the court holding that the commissioner of public safety exercised sound discretion in the refusal to issue said license and that he did not act either in an arbitrary, tyrannical or unreasonable manner or on any fact based upon false information. After the denial of said motion this action was commenced for the relief above set forth and a temporary injunction granted by the court restraining the defendants from interfering with the plaintiff in the operation of his taxi upon the streets of the city and application is made to dissolve said injunction.

This action is not based upon the abuse of power on the part of the commissioner of public safety, but it is claimed that this ordinance is unconstitutional and void in that it clothes the commissioner of public safety with discretion to discriminate between citizens and that he has done so; that this ordinance is void in that it is an infringement of section 6 of article I of the State Constitution and section 1 of the Fourteenth Amendment of the Constitution of the United States. The purport of both is to the effect that no person shall be deprived of property without due process of law, and that no state shall deny to any person within its jurisdiction the equal protection of the law.

The ordinance complained of reads as follows: " It shall be unlawful for any person to drive or operate any taxicab upon the streets or public places in the city of Utica without first having secured and having in force and effect a taxicab driver's license issued by the City Clerk upon the approval of the Commissioner of Public Safety. The applicant must satisfy the said Commissioner of Public Safety that he is over eighteen years of age; of good moral character; competent to drive a motor vehicle upon the streets of the city of Utica and has a thorough knowledge of the laws of the State of New York affecting or regulating the operation of motor vehicles, the traffic ordinances of the city of Utica and of this ordinance."

Section 19 of the General City Law provides: " Every city is granted power to regulate, manage and control its property and local affairs and is granted all the rights, privileges and jurisdiction necessary and proper for carrying such power into execution. No enumeration of powers in this or any other law shall operate to restrict the meaning of this general grant of power, or to exclude other powers comprehended within this general grant."

Section 30 of the Second Class Cities Law reads as follows: " The legislative power of the city is vested in the common council thereof, and it has authority to enact ordinances, not inconsistent with law, for the government of the city and the management of its business, for the preservation of good order, peace and health, for the *safety and welfare of its inhabitants* and the protection and security of their property."

Acts of this character have been repeatedly sustained in this state. In the city of Utica, *People ex rel. Economus* v. *Coakley,* 110 Misc. Rep. 385; in the city of Brooklyn, *City of Brooklyn* v. *Breslin,* 57 N. Y. 591; city of Syracuse, *People ex rel. Larrabee* v. *Mulholland,* 82 id. 324.

" The occupation of a common carrier has at all times been recognized as subject to legislative control." *People* v. *Martin,* 203 App. Div. 423.

One of the important questions to be discussed here is, could this ordinance be classed as giving the city officials power to discriminate between persons occupying the same relative position in life. If it does, clearly it would be an infringement upon their constitutional right. But, on the other hand, if the ordinance has a uniform standard, which applies to all persons, then they must conform to that standard before they can receive its benefit, and failure so to do would not deprive them of a constitutional right. So that if this ordinance had merely declared under its first provision that it was unlawful for any person to drive a taxicab unless he obtained a license, the contention of the plaintiff would be of great force, but the ordinance fixes a definite standard, not of the person himself, but of his necessary qualifications. This person, no matter who he is, must satisfy the commissioner of public safety along the following lines:

(a) That he is over eighteen years of age.

(b) Of good moral character.

(c) Competent to drive a motor vehicle upon the streets of the city of Utica.

(d) Have a thorough knowledge of the laws of the state of New York affecting or regulating the operation of motor vehicles, the traffic ordinances of the city of Utica, and of this ordinance.

Truly none of these requirements are unnecessary or improper under the present status of motor vehicle operation, and if the ordinance was drawn with a greater strictness, particularly as to the knowledge of the laws of the state and the operations of motor vehicles and of good moral character, much good would result. There is altogether too much laxity along this line among the people of the state, particularly in our large cities, at the present time, too much laxity of morals, too much indiscriminate fast driving to justify any court in setting aside a regulative ordinance of this character unless clearly in contravention of the Constitution of the nation or state.

Passing to a further suggestion, there must be an ordinance that confers upon someone power to determine whether an applicant is within the rule prescribed, which is a general rule not applying to one person any differently than to another, and who is more competent and better prepared to exercise that discretion than the commissioner of public safety in a city of the second class? It should be lodged in the mayor or the commissioner of public safety or the chief of police or some responsible head. It could not be left to the judgment of the person himself but must be left to some one in authority to pass upon the question as to the ability of the candidate.

Contention is made that the ordinance is unconstitutional and citation is made of a case in South Dakota, namely, *City of Sioux Falls* v. *Kirby*, 6 S. D. 62, where the Supreme Court held invalid an ordinance forbidding "the erection of any building that is hazardous or which exposes property or persons to danger from fire" unless the owner obtain a permit from the inspector and pay the fee, which permit may be granted by the inspector or withheld if he is satisfied that the building complies with the requirements of the ordinance.

This provision differs in its entirety from the ordinance which is the subject of this discussion. The court clearly pointed out in that case that there was no provision as to what should be deemed to constitute a safe construction, no rule or regulation. In this ordinance it is specifically stated under the suggestions that have been made above, the requirements in detail that a person must follow. Moreover the ordinance in the South Dakota case applies directly to a person exercising his rights over a piece of property that he owned absolutely, namely, the soil on which he resided. He had the title in fee. His right could not be taken away from him by any court or any statute unless by due process of law.

Passing to this branch of the case, let us analyze the right of

this plaintiff to use the streets of the city of Utica.. It was not and never can be a property right, such a right as a person has in the land itself. It is, giving it its most favorable construction, a mere license to drive over the streets of the city for the specific purpose of obtaining a livelihood by the carrying of passengers. This cannot be considered a right, but a privilege granted by a municipality, and is not in the same class as the property right set forth and defined in the South Dakota opinion.

In the New York electric cases commencing with *People ex rel. N. Y. Elec. Lines Co.* v. *Squire*, 107 N. Y. 593, a rule was established applying to .this situation which was as follows:

" The primary and fundamental object of all public highways is to furnish a passage-way for travelers in vehicles, or on foot, through the country. * * * They were originally designed for the use of travelers alone. But in the course of time and in the interest of the general prosperity and comfort of the public they have been put, especially in large cities, to numerous other uses; but such uses have always been held to be subordinate to the original design and use. Thus they have been appropriated in recent times for the reception of sewers, water pipes, gas pipes, pipes for heating and manufacturing purposes, underground railroads, trenches for wires for telegraph, telephone and other purposes, which all require in their construction the disruption of the pavements and the temporary interruption, at least, of the rights of travelers in the public highways."

" The due and ,orderly arrangement of the various and conflicting claims to privileges in the streets of large cities * * * is pre-eminently a police power, and it is within the legitimate authority of a legislature to delegate its exercise to municipal corporations."

This doctrine was affirmed in *People ex rel. N. Y. Elec. Lines Co.* v. *Squire*, 145 U. S. 175, also followed in *American R. T. Co.* v. *Hess*, 125 N. Y. 641, and numerous other cases.

Applying this doctrine of police power to the present situation, it can be readily seen that no fundamental primary right existed at all. Before the settlement of the city of Utica, the highway from Baggs square through to the Sauquoit valley was an Indian trail. Its primary object was to furnish a passageway for travelers at that time, the original inhabitants of this immediate territory. It has never been changed from that purpose and later became a portion of the old plank road for the traveling public set apart as a passageway for travelers. Later this immediate locality became a village and developed finally into a city and now we have a population of over 100,000. The activity of city life, modern development of business, the necessity of rapid transit in cities to accomplish results, created a condition whereby certain persons

by the operation of transit facilities could receive compensation from the traveling public. This first developed the use of cabs, afterwards horse-drawn street cars, later electric development as a motive power for the cars, and still later the automobile. These were not in a sense a necessity but were a mere convenience to facilitate business operations and the pleasures of the people. Those who sought to operate these adjuncts of our civilization were not acquiring a right. They had no right in the use of the streets for that purpose. They were petitioners to the seat of government for the privilege of operating and, being in that position, they must necessarily conform to the rules and regulations of that government before they can operate, and under the conditions that are developing in this state on account of the irresponsible activities of these people, they should be classed very particularly as being under the direct police power of the municipality.

The judgment of the court is that the temporary injunction granted in this case should be vacated and dismissed, with costs.

Ordered accordingly.